## 35430. KELLOS v. PARKER-SHARPE, INC. et al.

HILL, Justice.
Plaintiff brought a complaint in equity to compel the defendants to transfer certain shares of corporate stock to her, to appoint a receiver, to compel an accounting, to liquidate the assets of the corporation, and for $350,000 in damages. In her complaint she alleged that the four individual defendants were in default on certain promissory notes (four identical notes in face amount of $25,000 each). Those notes were each secured by 2,500

shares of stock in the defendant corporation, Parker-Sharpe, Inc., to be held by the payee as collateral. The notes were dated October 27, 1976, payable March 1, 1978. Under the terms of the notes the payee was given the right only to foreclose on the collateral without recourse upon the makers, and the makers were given the option to pay the notes in cash or in the shares of stock held as collateral.

On November 10, 1976, only a few days after the execution of the notes, the makers wrote four identical letters to the plaintiff, giving her notice that they were electing to pay the notes in those shares held by her and stating that she was to look only to the shares for payment, except for the payment of interest as specified in the notes. Plaintiff acknowledged the letters in writing, also acknowledging that she could look only to the shares for payment.

In her complaint, plaintiff alleged that there was an oral agreement among the parties as follows: that she was to be a stockholder of the corporation, but not of record; that the loans were made for this purpose; that the loans were to be repaid in stock, not in cash; and that the letters electing to repay the loans in stock were made pursuant to the earlier oral agreement.

The loans were not repaid in March, 1978, when due. In December, 1978, plaintiff signed four receipts for $4,586 each as interest on the loans made to the defendants. In March, 1979, plaintiff agreed in writing to further postpone the due date on the notes until September, 1979, as an accommodation. She indicated at that time, in writing, that she waived none of her rights, including the right to redeem the notes in shares of stock.

In May, 1979, the defendants tendered to the plaintiff cashier's checks in the amount of the loans plus interest, accompanied by letters revoking all prior expressions of intent, elections, or predictions as to how any elections would be exercised, including anything to the contrary in the earlier letters of election. Plaintiff refused tender of the checks, declaring herself, her security interest, and her collateral unsafe and insecure under the terms of the notes, and demanding immediate payment of the notes in shares of stock as elected by the defendants. Upon failure

of the defendants to comply, plaintiff brought this action. Her complaint incorporates by reference 26 exhibits attached thereto consisting of the notes, the written security agreements, the letters signed by the parties and a demand letter from plaintiff's counsel. The trial court granted defendant's motion to dismiss.

1. The promissory notes provide that the makers have the option to discharge their obligations by paying money or by relinquishing the collateral. Plaintiff alleged in her complaint that there was an oral agreement that the notes would be repaid only in the stock pledged as collateral (i.e., there was an alleged oral agreement that the notes could not be repaid with money). On appeal plaintiff argues that the alleged oral agreement among the parties is offered to show the circumstances surrounding execution of the agreements and to explain the consideration.

Although parol evidence as to the surrounding circumstances is admissible to explain ambiguities and to aid in the construction of contracts, Code §§ 38-502, 38-505, 20-704 (1), parol evidence which contradicts or varies the terms of a written instrument is inadmissible, Code §§ 38-501, 20-704 (1); *Smith v. Standard Oil Co.*, 227 Ga. 268 (1) (180 SE2d 691) (1971); *Preferred Risk Mut. Ins. Co. v. Jones,* 233 Ga. 423 (1) (211 SE2d 720) (1975); *Zorn v. Robertson,* 237 Ga. 395 (228 SE2d 804) (1976); Green, Ga. Law of Evidence § 208 (1957). See also Code Ann. § 109A-8—319.

Plaintiff's allegations that it was orally agreed that the notes could not be paid in money contradict the writings and will not be considered, even on motion to dismiss. See *F. C. Brooks & Sons v. Shell Oil Co.,* 226 Ga. 435 (2) (175 SE2d 557) (1970). We treat the stock as collateral as the written agreements specified.

2. The central issue in this case is the effect, if any, of the November 10, 1978, letters from the makers of the notes electing to pay the notes by relinquishing the collateral. We do not deal here with the usual alternative contract.[1] We deal here with the alternatives of

---

[1]Regarding contracts to be discharged by alternative performances generally, see 5 Corbin on Contracts 456-

discharging a contractual obligation by payment in money according to its terms or by relinquishment of collateral, also according to its terms, at the election of the maker.[2]

The UCC provides that a debtor generally has a right to redeem the collateral "unless otherwise agreed in writing after default." Code Ann. § 109A-9—506. The UCC also provides that the right secured by § 109A-9—506 (the right to redeem collateral) cannot be waived or varied except as provided in that section. Code Ann. § 109A-9—501 (3). Thus, the right to redeem collateral may be waived by an agreement in writing, after default, but cannot be waived by an agreement in writing before default. There being no default at the time of the purported waiver or election on November 10, 1976, those elections are not binding upon the debtors.

This, however, does not mean that the plaintiff is not entitled to recover, in money, the amounts due under the promissory notes.[3] Thus, even though plaintiff may not be entitled to the stock, she would be entitled to the money due, unless its recovery were barred for some other reason, and it was error to dismiss her complaint on the basis of Code Ann. § 109A-9—501 et seq.

3. The notes provided for interest "from date at the rate of (9%) percentum per annum, on the unpaid balance until paid . . ." They also provided that "Except for interest, the maker of this note shall have the option to pay this note either in legal tender of the United States or

---

457, § 1079 (1964).

[2]Under the terms of the notes, the makers were given the option to pay the notes in cash or in the shares of stock held as collateral. There was no consideration for the November 10, 1976, letters "exercising the option." Hence those letters were not contracts, nor amendments to the notes, nor were they the typical exercise of an option due to the effect of Code Ann. § 109A-9—506, discussed hereinafter.

[3]A creditor's refusal to accept a proper tender does not extinguish the claim. *Bourquin v. Bourquin,* 120 Ga. 115, 119 (47 SE 639) (1904).

in those shares, together with all stock dividends and stock splits thereof from this date, of Parker-Sharpe, Inc., given as collateral to secure the payment of this note. The only payment of the interest on this note shall be by the cash dividends paid by Parker-Sharpe, Inc., on the shares given as collateral to secure this note. In the event that payment is made by payment in shares, as aforesaid, or in the event that the payee shall foreclose on her collateral securing this note, then the maker of this note shall not be liable or responsible to pay this note (as to both principal and interest) in legal tender of the United States, and the payee shall look only to the aforesaid shares for payment of this note."

Whatever construction may be given these provisions, neither the 9% interest rate nor the payment in stock (at the option of the maker) is usurious. Ga. L. 1975, p. 370 (former Code Ann. § 57-101); *Walton Guano Co. v. Copeland,* 112 Ga. 319 (2) (37 SE 411) (1900).

Moreover, the applicable usury statute, Ga. L. 1975, p. 370, supra, if violated, would bar the lender's right to recover interest, not the lender's right to recover the principal. Code § 57-112.

4. Plaintiff filed affidavits which stated that the reason these loans were used to conceal her stock ownership and the reason she was not to appear as a stockholder of record was that if the Kellos name were associated with the corporation, it would be unable to obtain either credit or performance bonds. The trial court dismissed the complaint on the basis of unclean hands; i.e., that the alleged oral agreement was calculated to mislead and deceive and would be unconscionable and against public policy.

These facts did not appear in the complaint and hence would not normally be considered in ruling on a motion to dismiss the complaint for failure to state a claim for relief. Even if the affidavits offered by plaintiff had been treated as an amendment to the complaint or if the motion to dismiss had been treated as a motion for summary judgment, the defense of lack of clean hands would have only authorized rejection of plaintiff's prayers for equitable relief; the defense of lack of clean hands would not authorize dismissal of plaintiff's complaint to the

extent that it could be found to state a claim for relief at law. *Bagwell v. Johnson,* 116 Ga. 464, 468 (42 SE 732) (1902).[4]

5. For the reasons stated above, the trial court did not err in denying relief to plaintiff as a purported stockholder in the corporation under Code Ann. §§ 22-1317 (a) (1), 22-1318.

6. In summary, and following plaintiff's enumerations of error, the trial court did not err in refusing to enforce the alleged oral agreements that the notes would be satisfied by payment of the stock rather than money (see Division 1 above); the court did not err in refusing to enforce the November 10, 1976, elections by the makers to pay the notes by relinquishing the collateral (see Division 2 above); the court did not err in refusing to order the corporation to record the shares held by plaintiff as collateral in her name (see Division 5 et ante); but the court did err in dismissing plaintiff's complaint in its entirety (see Divisions 2, 3 and 4).

It follows that this case must be remanded for further proceedings.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Clarke, J., not participating.*

ARGUED OCTOBER 9, 1979 — DECIDED JANUARY 8, 1980 — REHEARINGS DENIED JANUARY 25, 1980.

*Knox & Zacks, Wyck A. Knox, Jr., Raymond G. Chadwick, Jr.,* for appellant.
*Alston, Miller & Gaines, Jay D. Bennett, Fulcher, Hagler, Harper & Reed, William M. Fulcher,* for appellees.

ON MOTION FOR REHEARING.

On motion for rehearing, the defendants urge that the trial court correctly dismissed plaintiff's complaint (and that its order should be affirmed in toto) because plaintiff did not pray for recovery of the principal amount of the debt. A complaint should not be dismissed for failure

---

[4] See footnote 3 above.

to state a claim upon which relief can be granted unless the complaint discloses with certainty that the plaintiff would not be entitled to relief under any state of provable facts. *Tri-City Sanitation v. Action Sanitation Service,* 227 Ga. 489, 490 (181 SE2d 377) (1971). Moreover, it appears that if we were to affirm the trial court's order in toto and if plaintiff were then to sue for recovery of the principal amount of the debt, the trial court's order dismissing the complaint could be asserted as a bar of res judicata. See Code Ann. § 81A-141 (b), § 110-501.

*Motion for rehearing denied.*