**William T. PETERSON and John Henry Miller, Plaintiffs-Appellees,**

v.

**LEXINGTON INSURANCE COMPANY, Defendant-Appellant.**

**No. 84–8274.**

United States Court of Appeals, Eleventh Circuit.

Feb. 22, 1985.

Edwin D. Robb, Jr., Roy E. Paul, Savannah, Ga., for defendant-appellant.

J. Thomas Whelchel, Brunswick, Ga., for plaintiffs-appellees.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

## I. STATEMENT OF THE CASE

The Lexington Insurance Company appeals from a jury verdict in favor of an alleged boat owner, Peterson, and mortgagee, Miller, on a hull insurance policy and a mortgagee coverage policy. The insured boat, The Calliope, sank after it was seized by the Coast Guard for carriage of contraband.

The Calliope was seized several hundred miles off the East Coast of Florida by a Coast Guard vessel commanded by Lt. Robert McGarry. The Calliope was carrying substantial quantities of marijuana. After the Coast Guard officers arrested the crew, they towed The Calliope for more than a day. During the towing operations, The Calliope took on water by the stern. The Coast Guard then cut The Calliope loose in order to chase another suspected drug boat. When the Coast Guard returned to retrieve The Calliope, the boat had sunk. The insurance company refused to pay on claims filed by Peterson and Miller on several grounds, only one of which we need consider.

## II. ISSUE

Did the court err in admitting parol evidence that a "bill of sale" was not intended to transfer ownership of The Calliope from Peterson to Robert Penney?

## III. DISCUSSION

Among the defenses interposed by Lexington was its contention that Peterson had sold the vessel to one Penney, who had served periodically as captain of The Calliope and that this sale, without notice to or consent by Lexington avoided the policy.[1]

At the trial, Lexington introduced in evidence a standard Coast Guard bill of sale form which it relied upon to prove its defense of change of ownership. This form is headed "bill of sale." It then names the seller and shows Peterson's name as owning 100 percent. It then shows the buyer's interest as Robert W. Penney 100 percent. Under the heading "consideration received" is the figure $10,000 cash and then follows the following paragraph 6:

I (we) do hereby sell to the buyer(s) named above, my (our) right, title, and interest in the vessel together with the following necessaries and appurtenances: All blocks, tackle, nets, doors and all fishing gear as is now aboard vessel.

Then in the same paragraph 6 is the following language:

This sale is made to the buyers in the proportion specified, subject to the following warranties and conditions:

$10,000.00 cash paid in hand and $15,000.00 cash to be paid by August 27, 1982—at which time financing will be secured by Robert W. Penney for the unpaid balance of $115,000.00. If for any reason the aforementioned Robert W. Penney does not secure satisfactory financing the vessel will be returned to W.T. Peterson without refund.

Paragraph 7 marked "signature(s) of seller(s)" then shows the typed name and written name of William T. Peterson and then "buyer" Robert W. Penney, first typed and then signed personally. The Vessel is described as Calliope and the

---

1. The terms of this provision applicable to both insurance agreements follows:

    *Change of Interest*—In the event of any change, voluntary or otherwise, in the ownership of the Vessel or if the Vessel be placed under new management or be chartered on a bareboat basis or requisitioned on that basis, then, unless the Underwriters agree thereto in writing, this Policy shall thereupon become cancelled from time of such change in ownership or management, charter on requisition.

official Coast Guard number is listed in the contract.

At the trial, the court, over the objection of appellant, permitted Peterson to introduce parol evidence of himself and Penney to the effect that this was not a real sale but was merely the grant of an option by Peterson to Penney.[2]

In response to a motion for judgment notwithstanding the verdict, the trial court explained his having admitted this evidence as follows:

> Although the Court recognizes that the operation of the parole (sic) evidence rule in contract cases requires *that the trial court first determine whether or not the contract terms are ambiguous,* the parole (sic) evidence was nevertheless admitted because of the circumstances of the case. The bill of sale consisted of a Coast Guard approved form executed by two men, Peterson and Penny, neither of whom possessed a legal education. Neither party to the contract was seeking to establish a particular meaning of its terms in order to support or defeat a recovery under the insurance contract. Rather, the literal terms of the bill of sale were relied upon by the insurance company to meet its burden of proving that the change in ownership exclusion applied to void coverage under the policy. Under these circumstances, the Court felt that Peterson should be permitted to explain the meaning and purpose behind the bill of sale document. Moreover, defendant pointed out the self-serving nature of the parole (sic) evidence and asked the jury to disregard it. *Finally, the Court instructed the jury to consider the parole (sic) evidence only if they found the bill of sale to be ambiguous.* Given this set of events, the admission of the parole (sic) evidence on the meaning of the bill of sale was not prejudicially erroneous. (emphasis added.)

■ Of course, the court was correct in its first statement that the court must determine the question of ambiguity, and this is determined as a question of law. It is not part of the jury's duty to determine whether or not a written contract is ambiguous.

■ There is probably no better known rule of law than that which says that parol evidence may not be used to contradict the terms of an unambiguous written contract. *Kellos v. Parker-Sharpe, Inc.,* 245 Ga. 130, 132, 263 S.E.2d 138 (1980), citing § 38–501 Ga.Code Ann. (1933), now O.C.G.A. 24–6–1 which states: "Parol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument." Exceptions to the parol evidence rule are stated in O.C.G.A. 24–6–3(b): "Parol evidence shall be admissible to explain all ambiguities, both latent and patent."

■ Here, the trial court did not determine whether this bill of sale was ambiguous. It was, of course, the court's function first to determine that the bill of sale was in fact ambiguous before permitting the evidence to go to the jury. However, the posture of the case does not change by virtue of the court's failure to resolve this issue, since we are satisfied that try as hard as one might, it is impossible to find an ambiguity in this bill of sale. The fact that the two principals were not lawyers

---

**2.** Responding to the objection of appellant to the introduction of such evidence, the trial court stated:

> Well, the defendant objects to it. Members of the jury, when two persons enter into a contract, and the contract is plain, unambiguous, clear, then the law does not permit orally to say it meant something different from what it said. However, sometimes contracts, or purported contracts, may be ambiguous—that is, unclear—and if that is the case, then the law permits the parties who entered into it to explain what they meant by the terms that are ambiguous. Now, the insurance company claims that there is nothing ambiguous about this bill of sale; it says precisely what they intended for it to say; there is nothing unclear about it, nothing ambiguous about. *If that is true, then, all of this testimony, you would not give any consideration to, as to their intent different from the words appearing on that document.* On the contrary, the plaintiff claims, no, that there is some ambiguity in this contract, and it really does not speak what we had in mind. That is what he is talking about. Go ahead. (emphasis added.)

and the fact that the insurance company was relying upon "the literal" language of the contract to void the policy, shows nothing with respect to the question of ambiguity. The bill of sale executed was on the regular form of the Coast Guard which is required when a sale of a vessel is made. All the language relates to a sale and conveyance, and the other provisions merely relate to the method of payment.

Having concluded that there is only one construction that could be made of this agreement, it is plain that the policies became void upon the execution of the document by Peterson and Penney.

The appellant states that it tendered a refund of a proportional amount of the premiums in the event of the success of its defense. Upon remand, of course, the appellees are entitled to a proportionate refund of the premiums paid by them for the period after the date of the sale.

The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.