DATA SECURITY, INC., APPELLEE, V. ALAN L. PLESSMAN AND PAUL PLESSMAN, APPELLANTS.

510 N.W.2d 361

Filed April 6, 1993.   No. A-91-391.

660

Alan L. Plessman for appellants.

Richard P. Garden, Jr., of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

Appellee, Data Security, Inc. (Data), brought a replevin action for the return of a Data stock certificate delivered to appellant Alan L. Plessman as security for a loan from him and appellant Paul Plessman.

Alan Plessman and Paul Plessman appeal from the district court's order sustaining Data's motion for summary judgment and overruling appellants' motion for summary judgment. Appellants' assignments of error can be combined to assert that

the district court erred in (1) finding that the 4,000 shares of stock were security for payment of a promissory note and that the transaction between the parties was governed by Neb. U.C.C. art. 9, (2) finding that Data had an absolute right to redeem the stock and that the right could not be waived prior to default, (3) finding that the liquidated damage clause in paragraph 3(g) of the supplemental agreement is unconscionable and constitutes a penalty, (4) sustaining Data's motion for summary judgment, (5) overruling appellants' motion for summary judgment, and (6) overruling appellants' motion for new trial.

## STANDARD OF REVIEW

An appellate court's review is governed by the rule that summary judgment is proper when there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from any material fact and the movant is, as a matter of law, entitled to judgment. *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 470 N.W.2d 772 (1991). Moreover, when reviewing a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

Although the denial of a motion for summary judgment is not a final order and is not appealable, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, an appellate court obtains jurisdiction over both of the motions and may determine the controversy which is the subject of those motions, making an order specifying the facts which appear without controversy and directing such further proceedings as it deems just. *Id.* In this case, counsel agreed that there were no issues of material fact.

## BACKGROUND

Data is a closely held corporation. Cary Gray, Brian Boles, and Rodney Basler were the original stockholders of Data. They remain the principal stockholders of Data and are officers and directors of the corporation. Appellant Alan Plessman is an attorney who began representing Data in 1985, when he

prepared Data's articles of incorporation. On March 14, 1987, appellants loaned $120,000 to Data. Data executed a note which became due in 1 year and an investor agreement which set forth the terms of the loan. The loan documents were prepared by Alan Plessman. Appellants were referred to in the loan documents as investors. Pursuant to the initial loan agreement, Data granted 3 percent of the issued and outstanding shares of Data to Alan Plessman and 3 percent of such shares to Paul Plessman. The right to possession of these shares is not in dispute in this appeal. The terms of the loan included Data's promise to pay to appellants within 6 months from the date of the note, March 14, 1987, the sum of $6,000, which sum represented 6 months' interest on a principal sum of $120,000, and within 12 months from the date of the note, the principal amount of $120,000 together with interest for an additional 6 months equaling $6,000.

Data timely paid the first 6 months' interest. By January or February 1988, it became evident that Data could not repay the original loan when it became due. On March 14, 1988, Alan Plessman wrote to Basler and Gray, demanding payment of the loan in full. As an alternative, Alan Plessman outlined a proposal for a 2-year extension of the loan, which was to be secured by 4,000 shares of stock in Data. Data executed a promissory note dated March 14 for $108,000 (renewal note) and, on March 28, executed a "Supplemental Investor Agreement for Data Security, Inc." The renewal note and supplemental agreement were prepared by Alan Plessman, and the supplemental agreement required Data to issue an additional 2 percent of Data's stock to Alan Plessman and an additional 2 percent of such stock to Paul Plessman. The supplemental agreement also required Data to issue a certificate evidencing 4,000 shares of treasury stock, which was to be held by Alan Plessman as security for the renewal note. It is the right to possession of the latter 4,000 shares which is at issue in this case.

The controversy in this case arises from the interpretation of paragraph 3(g) of the supplemental agreement, which provides as follows:

Said Promissory Note shall be secured by 4,000 shares of

stock in DATA, free and clear of other lien or encumbrance, presently authorized but not yet issued by DATA. Said shares shall be issued to DATA as Treasury Stock. DATA shall endorse said share certificates in blank and the same shall be held in trust in a safe deposit box by Alan L. Plessman. Failure to have said shares issued, endorsed over, and delivered, within 30 days from and after the date of this agreement, shall cause acceleration of all payments and the entire principal and accrued interest, as reflected by said Promissory Note, shall be immediately due and payable and deemed delinquent. Upon full and timely payment of principal and accrued interest due on the Promissory Note, said stock certificate shall be returned to DATA, at which time, said shares of Treasury Stock shall be and remain unvotable, and owned by DATA free of lien or encumbrance, except as otherwise determined or authorized by a unanimous vote of the Board of Directors of DATA. So long as the terms and provisions of said Promissory Note are being fully and timely performed, said shares of stock shall not be voted or votable by anyone. In the event of failure of DATA to make in full, when due, any of the payments set forth above, said voting restriction shall be immediately lifted and said shares shall be accepted by INVESTORS in partial payment of the principal and interest due on the Promissory Note, using a value of $1.00 for each of said shares; provided that said transfer of shares shall not excuse or relieve DATA from its obligation to pay the principal and accrued interest due on said Promissory Note after credit for said stock value, which shall be applied first to accrued interest and then to principal. This paragraph provides for liquidated damages and is not deemed to be a penalty. DATA may, five (5) years from the date of the conveyance of such additional shares of corporate stock to INVESTORS, buy back said shares.

The renewal note was to be repaid in four installments over 2 years. The first installment, $19,020, was paid by its due date of September 14, 1988. The second payment, $18,240, was due on March 14, 1989. On March 14, Gray mailed a check in the

amount of $18,240 to Paul Plessman. Paul Plessman deposited the check to his account at Jones National Bank. Although the check was received 1 day late, neither appellant declared a default under the renewal note. The third payment, $17,460, was timely made, and the fourth and final installment, $76,680, was due on March 14, 1990. There is no dispute that the final check was mailed 1 day late. On March 17, Paul Plessman deposited the check to his account at Jones National Bank.

It is the contention of appellants that Data forfeited what amounts to 40 percent of its stock because the check representing the final payment was 2 days late. In a letter dated March 27, Alan Plessman acknowledged that Data had "paid off its promissory note of March 14, 1988," the renewal note, and returned the original promissory notes. He also stated that as the last payment had not been made when due as required by paragraph 3(g) of the supplemental agreement, he was sending a check in the amount of $4,000 "as the price for purchase of the 4,000 shares."

On April 3, Gray wrote a letter to appellants and returned the $4,000 check to them. Gray also sent two checks to appellants, one in the amount of $97.65, which represented 2 days' interest on the renewal note, and the other in the amount of $250 for, as explained in the letter, "any expense reasonably incurred by [appellants] in retaking, holding and preparing the collateral for distribution, in arranging for the sale and to the extent provided by the Agreement and not prohibited by law, attorney's fees and legal expenses associated with this matter to date" by reason of Data's default under the renewal note. See Neb. U.C.C. § 9-506 (Reissue 1992). Appellants do not claim that this amount was insufficient.

## DISCUSSION

In *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986), this court reiterated that the subject matter of a replevin action is very narrow. " '[S]ince the main issue in a replevin action is one of title and right to possession, all matters foreign thereto must be excluded from consideration and are not available as defenses.' " *Id.* at 711, 386 N.W.2d at 457. "[T]he issue in replevin is

not *ownership* of the property . . . but the *right to immediate possession at the time of the commencement of the action.*" (Emphasis in original.) *Id.* at 712, 386 N.W.2d at 457-58.

*Barelmann v. Fox*, 239 Neb. 771, 778, 478 N.W.2d 548, 554 (1992).

*Applicability of Neb. U.C.C. Art. 9.*

The contract in this case clearly demonstrates that Data's debt to appellants was secured by the stock. The supplemental agreement, in paragraph 3(g), provided that "[s]aid Promissory Note shall be secured by 4,000 shares of stock in DATA." Thus, the evidence demonstrates that the loan transaction was mutually intended to be a secured transaction.

Neb. U.C.C. § 9-102(1) (Reissue 1992) provides: "Except as otherwise provided in section 9-104 on excluded transactions, this article [article 9] applies (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts."

Comment 1 to § 9-102 states:

Except for sales of accounts and chattel paper, the principal test whether a transaction comes under this article is: is the transaction intended to have effect as security? . . . When it is found that a security interest as defined in section 1-201(37) was intended, this article applies regardless of the form of the transaction or the name by which the parties may have christened it.

Neb. U.C.C. § 1-201(37) (Reissue 1992) defines a security interest as an interest in personal property or fixtures which secures payment or performance of an obligation. Appellants had a security interest in the 4,000 shares of Data stock to secure payment of the loan to Data. The supplemental agreement, signed on March 28, 1988, stated in paragraph 3(g) that the accompanying promissory note for $108,000 "shall be secured by 4,000 shares of stock in DATA." Therefore, Neb. U.C.C. art. 9 is applicable to this transaction.

*Right to Redeem.*

Under § 9-506, even after default, at any time before the

secured party has disposed of the collateral or entered into a contract for its disposition, the debtor has a right to "redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition . . . ."

The record shows that Data did everything necessary to redeem the collateral because it made all required payments of principal and interest and, in addition, tendered to Alan Plessman and Paul Plessman the sum of $250 in payment of any expenses reasonably incurred by appellants in retaking, holding, and preparing the collateral for distribution or sale. Data also tendered to appellants the sum of $97.65, which represented interest at the stated rate of 16.5 percent per annum on that portion of the indebtedness which remained unpaid between March 15 and March 17, 1990.

Appellants maintain that Data waived its right to redeem the stock, and they rely on paragraph 3(g) of the supplemental agreement in support of this claim. Appellants' argument that under Neb. U.C.C. § 1-102 (Reissue 1992), the provisions of the code may be, and were, varied by agreement is not completely accurate. Section 1-102 states that the code's provisions may be varied by agreement *except as otherwise provided in the code*.

Neb. U.C.C. § 9-501(3) (Reissue 1992) provides:

> To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied except as provided . . . but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable;
>
> . . . .
>
> (d) section 9-506 which deals with redemption of collateral.

Comment 4 to § 9-501 makes it clear that a debtor may not waive the right to redeem in a predefault agreement:

> Section 1-102(3) states rules to determine which provisions of the code are mandatory and which may be

varied by agreement. In general, provisions which relate to matters which come up between immediate parties may be varied by agreement. In the area of rights after default our legal system has traditionally looked with suspicion on agreements designed to cut down the debtor's rights and free the secured party of his or her duties: no mortgage clause has ever been allowed to clog the equity of redemption. The default situation offers great scope for overreaching; the suspicious attitude of the courts has been grounded in common sense.

Subsection (3) of this section contains a codification of this long-standing and deeply rooted attitude: the specified rights of the debtor and duties of the secured party may not be waived or varied except as stated.

Under § 9-506, the debtor has a right to redeem collateral at any time before the secured party has disposed of collateral or entered into a contract for its disposition unless otherwise agreed in writing *after* default. Under § 9-501(3)(d), a debtor's right of redemption may not be waived or varied except as provided in § 9-506, which means only in writing and *after* default. Thus, any agreement to a waiver of a right of redemption prior to default was invalid. There is no assertion that Data waived its right of redemption after default.

Other courts have held that a predefault waiver of a right of redemption is ineffective as a matter of law. In *Trimble v. Sonitrol of Memphis, Inc.*, 723 S.W.2d 633 (Tenn. App. 1986), a creditor sold its business and took back notes for the purchase price. The purchaser, in turn, executed a stock pledge agreement which provided:

> "Upon the occurrence of any default under any of the Notes or the Stock Purchase Agreement, all rights of Buyer to exercise voting and other shareholder rights and to receive dividends shall cease irmediately [sic], and all such rights shall become vested in Seller, who shall have the sole and exclusive authority to exercise such voting and other shareholder rights and to receive such dividends."

*Id.* at 637.

The purchaser defaulted, and the seller argued that the stock vested in the seller without any regard to the purchaser's right to

redeem. The court held that the stock pledge agreement which purported to vest the stock in the seller upon the purchaser's default was prohibited under both common law and Tenn. Code Ann. § 47-9-501(3) (1979).

In another case, *Kellos v. Parker-Sharpe, Inc.*, 245 Ga. 130, 263 S.E.2d 138 (1980), the defendants executed promissory notes secured by stock. The notes provided that the defendants could either pay the notes in cash or surrender the stock. Shortly after executing the notes, the defendants gave notice that they were electing to pay the notes by surrendering the stock. The defendants subsequently tendered to the plaintiff a cashier's check to pay the notes, together with a letter revoking their prior tender of the stock. The plaintiff refused the tendered payment and claimed ownership of the stock. The court stated:

> The UCC provides that a debtor generally has a right to redeem the collateral "unless otherwise agreed in writing after default." . . . The UCC also provides that the right secured by § 109A-9—506 (the right to redeem collateral) cannot be waived or varied except as provided in that section. . . . Thus, the right to redeem collateral may be waived by an agreement in writing, after default, but cannot be waived by an agreement in writing before default. There being no default at the time of the purported waiver or election on November 10, 1976, those elections are not binding upon the debtors.

(Citations omitted.) *Kellos*, 245 Ga. at 133, 263 S.E.2d at 140.

### *Paragraph 3(g).*

Data also argues that paragraph 3(g) of the supplemental agreement is unconscionable and constitutes a penalty. Because we dispose of this case based upon provisions of the Nebraska Uniform Commercial Code, as stated above, it is not necessary to discuss this assignment of error.

### *Motion for New Trial.*

The standard of review of an order denying a motion for new trial is whether the trial court abused its discretion. A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. *Kumar v.*

*Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990). We find no abuse of discretion in the trial court's denial of the motion for new trial.

## CONCLUSION

Because (1) the transaction was one governed by Neb. U.C.C. art. 9 and (2) Data had a right of redemption under § 9-506, the provisions of which Data fulfilled, Data was entitled to possession of the stock certificate evidencing 4,000 shares of Data stock as a matter of law at the time of the commencement of the replevin action. Thus, the granting of Data's motion for summary judgment in this replevin action was proper and is, therefore, affirmed.

AFFIRMED.