**Tanya SPICER, individually and on behalf of all similarly situated individuals, Plaintiff,**

v.

**The RYLAND GROUP, INC. and Ryland Mortgage Company, Defendants.**

Civil Action No. 1:07–CV–1446–CAP.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 18, 2007.

Anthony C. Lake, Gillen Parker & Withers, Atlanta, GA, Gary F. Lynch, Carlson Lynch, New Castle, PA, Thomas A. Withers, Gillen Parker & Withers, Savannah, GA, for Plaintiff.

Andrew C. Glass, David D. Christensen, R. Bruce Allensworth, Kirkpatrick & Lockhart Nicholson Graham LLP, Boston, MA, Roger A. Chalmers, Arnall Golden & Gregory, Atlanta, GA, for Defendants.

## ORDER

CHARLES A. PANNELL, JR., District Judge.

This matter is before the court on the defendants' motion to dismiss [Doc. No. 10].

### I. *Factual Background*

The plaintiff, Tanya Spicer, has brought this action, on behalf of herself and a putative nationwide class of individuals, pursuant to §§ 8(a) and 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a) and 2607(b), against the defendants. The Ryland Group, Inc. ("Ryland") and Ryland Mortgage Company ("Ryland Mortgage"). The case concerns the plaintiff's purchase of a residence from Ryland, which was financed by Ryland Mortgage.

On or about January 21, 2006, Ryland and the plaintiff entered into an Agreement of Sale ("agreement") [Doc. No. 1, Ex. A] wherein the plaintiff agreed to purchase a home from Ryland, which Ryland would construct. As part of the agreement, a number of riders were attached and incorporated by reference into the agreement. *Id.* at 4. One such rider was a Financing and Approved Settlement Costs Rider ("settlement rider") [Doc. No. 1, Ex. B], which provided, in part:

D. Provided that financing is obtained through Ryland Mortgage Company, We agree to pay for actual Approved Settlement Costs incurred up to $5,000 (the "Settlement Credit"). The Settlement Credit may be applied towards Discount Points, lock-in-fees, if applicable, and/or other Approved Settlement Costs.

E. In the event You choose a lender other than Ryland Mortgage Company,

We agree to pay for actual Approved Settlement Costs incurred up to $0 as a Settlement Credit. The Settlement Credit may be applied towards Discount Points, lock-in fees, if applicable, and/or other Approved Settlement Costs.

F. Your purchase price will reflect $5,000 worth of promotions which may include options or promotional discount. If You chose using a lender other than RMC as Your lender, the cost of the Promotion will be added to Your purchase price prior to closing and You agree to enter into an Amendment to the Agreement of Sale to reflect the change to the purchase price.

[Doc. No, 1, Ex. B, at 2]. The agreement defined "Settlement Costs" as: "All costs of settlement and transferring title, such as loan origination fees and discount points, transfer taxes, documentary stamps, intangible tax, recordation costs, survey, mortgagee and owner's title insurance premiums, flood insurance, attorneys' fees, if any, mortgage insurance, funding fees, property insurance premiums, prepaid items and prorated Property Charges" [Doc. No. 1, Ex. A, at 1]. However, "Approved Settlement Costs" excluded mortgage insurance premiums, real estate taxes, hazard insurance premiums, and interest [Doc. No. 1, Ex. B, at 2].

Another rider to the agreement was a notice of the affiliated business arrangement ("ABA rider") between Ryland and Ryland Mortgage [Doc. No. 10, Ex. 13]. The ABA rider indicated that Ryland had a business relationship with Ryland Mortgage Company and that the referral by Ryland to Ryland Mortgage may provide Ryland with a financial or other benefit. In addition, the ABA rider provided an estimated charge or range of charges for the settlement services listed. Finally, the ABA rider provided:

You are NOT required to use the listed provider(s) as a condition for settlement of Your loan on the purchase of the subject property. There are frequently other settlement service providers available with similar services. You are free to shop around to determine that You are receiving the best services and the best rate for these services.

*Id.* (emphasis in original). The ABA rider also contained an acknowledgment clause that stated: "You have read this disclosure form and understand that The Ryland Group, Inc. is referring you to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral." *Id.* The plaintiff signed and dated the ABA rider.

The agreement also provided that any changes, modifications, or amendments to the agreement must be in writing, which the plaintiff acknowledged by initialing [Doc. No. 1, Ex. A, at 3]. In addition, the agreement stated that there were no other oral or written agreements or representations, directly or indirectly, connected with the agreement, including representations or promises made by any sales person or other person, unless they are included in the agreement. *Id.* at 4. The agreement also contained a merger clause that indicated that the agreement, the attached riders, and the "Homebuyer's Guide" formed the complete agreement. *Id.* Finally, the agreement contained a choice of law provision providing that the laws of Georgia controlled the agreement. *Id.* In the complaint, the plaintiff contends that on or about May 24, 2006, Ryland had plaintiff execute another settlement rider [Doc. No. 1, ¶ 22]. The May 24, 2006, settlement rider provided:

D. Provided that financing is obtained through Ryland Mortgage Company, We agree to pay for actual Approved Settlement Costs incurred up to $10,000 (the "Settlement Credit"). The Settlement Credit may be applied towards Discount Points, lock-in-fees, if applicable, and/or other Approved Settlement Costs.

E. In the event You choose a lender other than Ryland Mortgage Company, We agree to pay for actual Approved Settlement Costs incurred up to $0 as a Settlement Credit. The Settlement Credit may be applied towards Discount Points, lock-in fees, if applicable, and/or other Approved Settlement Costs.

F. Your purchase price will reflect $0 worth of promotions which may include options or promotional discount. If You chose using a lender other than RMC as Your lender, the cost of the Promotion will be added to Your purchase price prior to closing and You agree to enter into an Amendment to the Agreement of Sale to reflect the change to the purchase price.

[Doc. No. 1, Ex. B, at 1]. According to the complaint, "at or around the same time, officers, employees, agents, or representatives of the defendants informed the plaintiff, in effect, that she was pre-qualified for a mortgage loan through Ryland Mortgage and that she could not obtain a loan from another lender." *Id.* at ¶ 23. According to the plaintiff, as a direct and proximate result of the defendants' requiring the plaintiff to either use Ryland Mortgage for financing or pay an additional several thousand dollars in order to purchase her home, the plaintiff financed the purchase of her home through Ryland Mortgage.

The plaintiff contends that by requiring the use of Ryland Mortgage, under the threat of charging buyers thousands of dollars more for their homes, the defendants violated 12 U.S.C. § 2607. In particular, the plaintiff contends that the defendants violated 12 U.S.C. § 2607(a) by giving and/or accepting a fee, kickback, or thing of value in exchange for the referral of real estate settlement services. In addition, the plaintiff contends that the defen-

dants violated 12 U.S.C. § 2607(b) by accepting and/or giving a charge made or received for a real estate settlement service other than for services actually rendered.

The defendants contend that 12 U.S.C. § 2607(c)(4), as well as the regulations promulgated by the United States Department of Housing and Urban Development ("HUD") to implement RESPA, allow the practice of offering an optional discount on settlement services in exchange for using an affiliated business association and that such an optional discount does not constitute an impermissible "required use" as prohibited under RESPA. The defendants contend that the plaintiff cannot state a claim against the defendants because the allegations made in the complaint, even if true, do not violate RESPA.

## II. *Legal Analysis*

### A. *The Defendants' Motion to Dismiss*

#### 1. *Standard for Dismissal Pursuant to Rule 12(b)(6)*

The defendants have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In ruling on the defendants' motion, the Court must assume that the plaintiff's allegations are true and construe all facts and inferences in the manner most favorable to the plaintiff. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir.2005). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is ... 'exceedingly low.'" *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985). Factual allegations must be enough, however, to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief,

this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court. *Id.*

This court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss. However, the Eleventh Circuit has held that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield. Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997); *Bickley v. Caremark RX Inc.,* 461 F.3d 1325, 1329 (11th Cir.2006).

#### 2. *Real Estate Settlement Procedures Act ("RESPA")*

12 U.S.C. § 2607 prohibits kickbacks and unearned fees in exchange for the referral of real estate settlement service business. In particular, 12 U.S.C. § 2607(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

In addition, 12 U.S.C. § 2607(b) provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

RESPA, however, provides for a qualified exemption from liability for affiliated

business arrangements[1] ("ABAs") which refer real estate settlement service business between themselves. In particular, 12 U.S.C. § 2607(c)(4) provides that a referral of settlement services to an associated business arrangement is not prohibited if: (a) disclosure is made of the existence of the affiliated business relationship to the person referred and such person is provided a written estimate of the charge or range of charges generally made by the provider to which the person is being referred, (b) such person is not required to use any particular provider of settlement services, and (c) the only thing of value that is received from the arrangement is a return on the ownership interest or franchise relationship.

The plaintiff alleges that Ryland's referral of the plaintiff to Ryland Mortgage is not exempt under § 2607(c)(4) because the plaintiff was "required to use" Ryland Mortgage for the financing of the home purchase, in direct contravention of the exemption, which specifically prohibits that a person be "required to use any particular provider of settlement services." HUD's implementing regulation for RESPA defines "required use," in the context of the affiliated business arrangement exemption, as:

A situation in which a person must use a particular provider of a settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or in part, to the settlement service. However, the offering of a package (or combination of settlement services) or the offering of discounts or rebates to consumers for the purchase of multiple settlement services does not constitute a required use. Any package or discount must be optional to the purchaser. The discount must be a true discount below the prices that are otherwise generally available, and must not be made up by higher costs elsewhere in the settlement process.

Regulation X, 24 C.F.R. § 3500.2. Thus, according to the regulation, the offering of a package or the offering of discounts or rebates to consumers for the purchase of multiple settlement services does not constitute a required use provided such package or discount is optional. An illustration provided with Regulation X provides further guidance in this respect:

Facts: A, a mortgage lender is affiliated with B, a title company, and C, an escrow company and offers consumers a package of mortgage title and escrow services at a discount from the prices at which such services would be sold if purchased separately. Neither A, B, nor C, requires consumers to purchase the services of their sister companies and each company sells such services separately and as part of the package.... At or before the time that customers are told by A or its employees about the services offered by B and C and/of the package of services that is available, the customers are provided with an affiliated business disclosure form.

Comments: A's selling of a package of settlement services at a discount to a

---

1. The term "affiliated business arrangement" means an arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than one percent in a provider of settlement services and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider. 12 U.S.C. § 2602(7). The plaintiff alleges that Ryland and Ryland Mortgage were affiliated business arrangements [Doc. No. 1, at ¶ 2].

settlement service purchaser does not violate section 8 of RESPA. A's employees are making appropriate affiliated business disclosures and since the services are available separately and as part of a package, there is not "required use" of the additional services....

24 C.F.R. § 3500 Appendix B(11). Furthermore, in promulgating the final version of Regulation X, HUD expressed that it was narrowing the definition of "required use" to clarify "that bona fide discounts and certain packaging of settlement services which provide options are not violations of the 'required use' provision." 57 Fed.Reg. 49600, 49603 (Nov. 2, 1992). Finally, HUD has also provided additional guidance on the particular scenario at issue in this case through its consumers forum:

> Question: A builder is offering to pay my closing costs or give me an upgrade package only if I agree to use his mortgage company. Is this legal under RESPA?
>
> Answer: Yes. While a builder cannot require you to use a mortgage company with whom he is affiliated, a builder is allowed to offer you a discount if you use a specific company. Under RESPA, the builder cannot charge you more for the home if you do not use his affiliated mortgage company.

U.S. Department of Housing & Urban Development, Frequently *Asked Questions About RESPA,* at http://www.hud.gov/offices/hsg/sfh/res/resconsu.cfm (last visited October 11, 2007).

### 3. *Application of the Law to the Facts of this Case*

The defendants contend that offering the plaintiff an optional discount on the plaintiff's settlement services if the plaintiff chooses to use Ryland Mortgage as her mortgage company in financing the purchase of her home falls squarely within the exemption. The defendants contend that the ABA rider explicitly stated that the plaintiff was "not required to use [Ryland Mortgage Company] as a condition for settlement of [her] loan on the purchase of the subject property" and that the plaintiff is "free to shop around to determine that [she is] receiving the best services and the best rate for these services" [Doc. No. 10, Ex. 1]. According to the defendants, although not required to do so, the plaintiff voluntarily chose to use the services of Ryland Mortgage in connection with purchasing the home from Ryland and, consistent with Regulation X, received a $10,500 discount on her settlement costs.

The plaintiff alleges that she was under the direct threat of having to pay thousands of dollars more for her home unless she used Ryland Mortgage. In her opposition to the defendants' motion to dismiss [Doc. No. 25], the plaintiff argues that she was essentially required to use Ryland Mortgage because of economic coercion— that is, use Ryland Mortgage or pay an additional $10,500 in order to purchase her home. According to the plaintiff, given the discount, she had no viable economic option but to use the affiliated lender.

In addition, the plaintiff contends that the discount offered by the defendants was not for a "package" or "combination" of settlement services because the discount related to the purchase of the services along with the home. According to the plaintiff, it is this discount tied to the purchase of the home that results in the coercion, leaving the plaintiff no choice but to accept financing from Ryland Mortgage if she wants to purchase the home.

■ A review of the settlement rider and the ABA rider [2] plainly indicates that

---

**2.** The plaintiff failed to include the ABA rider as part of the agreement that she attached as an exhibit to her complaint. The ABA rider is

the choice of using Ryland Mortgage was optional. The settlement rider is clear that the $10,500 discount towards settlement services is available "provided financing is obtained through Ryland Mortgage Company" [Doc. No. 1, Ex. B, at 1]. The settlement rider also explicitly indicates that the use of Ryland Mortgage is optional by stating "in the event You choose a lender other than Ryland Mortgage Company." *Id.* Nothing in the agreement or the May 24, 2006, settlement rider indicates that choosing another mortgage lender will result in an increase in the purchase price of the home. Not using Ryland Mortgage, however, results in the loss of the available $10,500 discount on approved settlement costs, as clearly stated in the settlement rider. *Id.* ("In the event You choose a lender other than Ryland Mortgage Company, We agree to pay for actual Approved Settlement Costs incurred up to $0 as a Settlement Credit.").

The ABA rider states: "You are NOT required to use the listed provider(s) as a condition for settlement of Your loan on the purchase of the subject property" and "You are free to shop around to determine that You are receiving the best services and the best rate for these services" [Doc. No. 10, Ex. 1 to Fuhr Declaration] (emphasis in original). The terms provided in the riders make it explicitly clear that the use of Ryland Mortgage was optional. The plaintiff was free to choose a different lender but would not be able to take advantage of the optional discount if she did.

The court concludes that Ryland's offering of a discount on settlement costs in association with the optional use of Ryland Mortgage does not constitute a required

use and falls within the exemption provided for under § 2607(c). HUD expressly recognizes such optional discounts tied to using a builder's affiliated mortgage company as permitted under RESPA. U.S. Department of Housing & Urban Development, Frequently *Asked Questions About RESPA, supra.* While the HUD interpretation is not controlling, such administrative agency interpretations may be viewed with deference. *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."). In addition, at least one other district court has found that an optional discount offered by a builder to pay for settlement costs conditioned on the use of an affiliated mortgage company to finance the home did not result in economic coercion and was not a required use under § 2607(c)(4). *See Geisser v. NVR, Inc.,* No. 3:01–0132, 2001 WL 36016177, at *3–4, 2001 U.S. Dist. LEXIS 26064, at *9–10 (M.D.Tenn. May 15, 2001) (dismissing the case under Rule 12(b)(6)).

 The plaintiff's complaint also alleges that at or near the time of the execution of the May 24, 2006, settlement rider "officers, employees, agents, or representatives of Ryland or Ryland Mortgage informed Plaintiff, in effect, that she was pre-qualified for a mortgage loan through Ryland Mortgage and that she could not obtain a loan from another lender" [Doc. No. 1, at ¶ 23]. This allegation is in direct contradiction with the language of the settlement

---

expressly incorporated into the agreement [Doc. No. 1, Ex. A, at 3]. "Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes

of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks,* 116 F.3d at 1369.

rider and ABA rider, which, as described above, explicitly and clearly indicated that the use of Ryland Mortgage was optional. In addition, the agreement clearly stated that any modifications, amendments, or changes to the agreement must be in writing [Doc. No. 1, Ex. A, at 3]. Finally, the agreement contained merger clauses which indicated that there were no oral or written agreements associated with the agreement unless included in the agreement, and that the agreement and attached riders formed the entire agreement *Id.* at 4. The plaintiff expressly acknowledged both the modification clause and merger clauses with her initials, and signed the settlement rider and the ABA rider.

The plaintiff has not alleged that her execution of the agreement was a result of fraud—Likewise, the plaintiff has not alleged that the agreement was ambiguous. To the contrary, the plaintiff's complaint alleges that "the borrower(s) were required by the *literal terms* of their real estate purchase agreement with Ryland to finance their purchase through Ryland Mortgage" [Doc. No. 1, at ¶ 40] (emphasis added), indicating that the complaint is based on the *written* agreement. Accepting the allegation as true that representatives of the defendants "informed" her, "in effect," that she could not use another mortgage company to get a loan does not create a right of relief in light of the contradictory language of the written agreement. Under the Georgia contract construction laws, as provided for by the choice of law provision in the agreement, the plaintiff's allegation that she was "informed" that she had to use Ryland Mortgage is inadmissible to add to, take away, or vary the written agreement. *See Kellos v. Parker-Sharpe, Inc.,* 245 Ga. 130, 263 S.E.2d 138, 140 (1980) ("Although parol evidence as to surrounding circumstances is admissible to explain ambiguities and to aid in construction of contracts, parol evidence which contradicts or varies terms of a written instrument is inadmissible."); *see also Geisser,* 2001 WL 36016177, at *4, 2001 U.S. Dist. LEXIS 26064, at *11–12 ("[I]n the absence of fraud, duress, or illiteracy, the state parol evidence rule bars the introduction of evidence contradicting written disclosure requirements ... [E]ven accepting the allegations of Plaintiffs' Complaint as true, that Plaintiffs were 'told' that they must use the affiliated settlement services in order to obtain and/or close the contracts, that evidence would not be admissible to vary the terms of the written agreements. The written documents, upon which Plaintiffs base their claims, indicate that proper disclosures were given and that the use of affiliated services was optional.").

For the reasons set forth above, the court concludes that the defendants' offering of a discount on settlement services, conditioned upon the use of an affiliated business arrangement in this case, is not a violation of § 2607, and the complaint fails to state a claim upon which relief can be granted.

### III. *Conclusions*

For the reasons stated above, the defendants' motion to dismiss [Doc. No. 10] is GRANTED. The clerk is hereby DIRECTED to close this case.

So ORDERED.