MARGARET C. FLEWELLEN *et al.*, plaintiffs in error, *vs.* THEO-
DORE S. FONTAINE *et al.*, defendants in error.

As a general rule, a court of equity will not be active in carrying into
effect an agreement, the object of which is to protect certain prop-
erty from a judgment lien to which it was justly subject, but will
leave the parties where it finds them.

Equity.    Debtor and Creditor.    Before Judge KIDDOO.
Quitman Superior Court. . May Term, 1876.

Reported in the decision.

A. HOOD, for plaintiffs in error.

JOHN T. CLARKE, for defendants.

WARNER, Chief Justice.

The complainants filed their bill against the defendants,
with a prayer for relief and injunction, upon the allegations
contained therein.    On the trial of the case, the jury, under
the charge of the court, found a verdict in favor of the de-
fendants.    A motion was made for a new trial on the various
grounds of error alleged therein, which was overruled by the
court, and the defendants excepted.

The case as made by the complainants' bill, and the evi-
dence in the record, is, in substance, as follows:    That in
January, 1871, James T. Flewellen, the husband and father
of complainants, obtained a homestead exemption in certain
described lands, known as the Shorter place, in Quitman
county, for the benefit of his wife and children; that prior
to obtaining said homestead exemption, the said Flewellen
had executed a mortgage upon said Shorter plantation, to-
wit: on the 1st day of February, 1868, to secure the pay-
ment of a promissory note of that date, due one day there-
after, for the sum of $11,805.50, payable to the executors of
John Fontaine, deceased; that there was a judgment in favor

of Baldwin & Co. against said Flewellen, for the sum of $14,233.93 principal, and $1,788.80 for interest up to the 3d of May, 1867, the date of that judgment, which constituted a prior lien on the Shorter plantation than the mortgage to ·the executors of Fontaine; that on the first Tuesday in April, 1874, all of the Shorter plantation was sold by the sheriff, except the homestead exemption, and the proceeds thereof applied to the payment of said judgment lien, leaving a balance due thereon of upwards of $8,000.00, which land was purchased at said sheriff's sale by T. S. Fontaine, who has the sheriff's deed therefor. It also appears in the record that, on the 3d of November, 1871, Flewellen and T. S. Fontaine, one of the executors, entered into an agreement in writing by which it was stipulated that Flewellen, for himself and wife, should convey to T. S. Fontaine the entire interest of the homestead in said Shorter plantation for the consideration of $3,000.00, to be paid by the said T. S. Fontaine, and that the said T. S. Fontaine should proceed to foreclose said mortgage on all the land covered ·by it, sell and bid off the same at the mortgage sale; and the said Fontaine further agreed then to sell and convey all of said land so purchased to said Flewellen as trustee for his wife, provided he, the said Flewellen, should pay to him, the said Fontaine, $10,000.00 punctually on the 1st of December, 1873; but if the said $10,000.00 should not be paid on the said 1st day of December, 1873, or tendered in payment by said Flewellen, then that the said Fontaine might keep the possession of said lands, and be at liberty to sell the same to any other person. It appears from the evidence of Flewellen, that after this written agreement was made, Fontaine and himself entered into a parol agreement that if he should, at any time, sell said Shorter plantation before December, 1873, for any sum over and above $10,000.00, the said Fontaine agreed to pay him the excess as trustee for his wife, and that he did sell the same, as the agent of Fontaine, to Green & Malthrop for $15,000.00, and the complainant in her bill claims that excess as *cestui que trust* under her homestead

claim in the land.    The consideration mentioned in the deed conveying the homestead to Fontaine is $3,000.00, with a covenant of warranty as to title.    The complainant alleges in her bill that this $3,000.00 for the homestead was never paid by Fontaine.    Upon this material point in the case, the evidence is conflicting.    The three notes for $1,000.00 each, attached to the defendants' answer, signed by Fontaine, payable to the order of Flewellen, and which were shown to have been indorsed and negotiated by him, were proved to have been given for the homestead, and paid by Fontaine when due.    Flewellen does not deny in his testimony that he got the $3,000.00 from Fontaine, but says it was advanced to him to obtain supplies to run the Shorter plantation, and that he expended nearly all of it in taking up liens for advances made in the year 1871, to enable him to open a new account with the merchants for 1872, and that none of it went to his wife and children in payment for the homestead land.    It also appears from the evidence in the record that the reason the land was not sold under the mortgage, as agreed to be done, was because Flewellen filed a bill in his own name enjoining said sale, and when that bill was dismissed, he procured the present bill to be filed by the complainants enjoining the sale, so that Fontaine, the defendant, has never had the opportunity to sell said lands under the agreement.

It is quite apparent, we think, on the face of this transaction, as disclosed in the record, that the main object and purpose of the parties in making the alleged agreements set forth, was to secure Fontaine's mortgage lien on the Shorter plantation, as well as to protect the homestead exemption thereon from the prior lien of the judgment creditors of Flewellen under the Baldwin & Co. judgment, which had been obtained against him, and then to secure the entire property to the complainant in trust, as against the existing judgment creditors of her husband.    In such cases, as a general rule, courts of equity will not be active in granting relief to either party, but will leave them where it finds them,

as the jury did in this case. There being no substantial error in the charge of the court in view of the facts disclosed in the record, and the presiding judge before whom the case was tried being satisfied with the verdict, we will not interfere with the exercise of his discretion in overruling the motion for a new trial.

Let the judgment of the court below be affirmed.