## BAGWELL *et al. v.* JOHNSON.

1. A person against whom no charge of wrong-doing is made, and who is not shown to have any interest in the outcome of a case, can not properly be joined as a codefendant with another who is alleged to have perpetrated a fraud upon the plaintiff.

2. He who seeks equitable relief must come into court with clean hands, and one who confesses to have voluntarily conspired with another to defeat a creditor of the latter can not be heard to complain that his partner in the fraudulent enterprise did not keep faith with him but victimized him also.

*Argued October 11, — Decided October 30, 1902.*

Equitable petition. Before Judge Fite. Murray superior court. August 12, 1902.

*C. L. Henry* and *Jones & Martin,* by *John W. Akin,* for plaintiffs in error.   *C. N. King* and *R. J. & J. McCamy,* contra.

FISH, J.   The assignment of error made in the bill of exceptions sued out in this case is that the trial judge overruled a demurrer to the plaintiff's petition. He relied, as a basis for the relief therein prayed, upon the following allegations of fact: On or about the last of March, 1901, he purchased from Bagwell a certain tract of land, consisting of three and one half acres, giving to the latter five notes covering the purchase-price of the property, and receiving from him a bond for titles.   Subsequently Bagwell came to plaintiff and said to him that "he wanted him to do him a favor; that he had signed a note for a man back where he came from, and he was afraid that he was going to have it to pay, and didn't think he should have to pay it, and that he wanted a little time, and that he wanted to get him to let him take up the bond for titles that he had made him, and give him back his notes, and that he would make a deed to his wife to said property and have her to make him a bond, and he, Johnson, could execute the notes, making them payable to his wife.   The said Johnson and Bagwell being the warmest friends, and he having the utmost confidence in said Bagwell and believing that he would do just what he said he would, readily agreed to allow the change made as requested."   So soon as Bagwell obtained plaintiff's consent to this arrangement, the former remarked that, in order to make plaintiff "perfectly easy" and to let him know that he (Bagwell) meant to treat him "perfectly right," he had "drawn a little instrument of writing" to be

signed by plaintiff, himself, and his wife, to the effect that "should the trade not again occur," she would deed plaintiff "five acres of her land." Replying "that was kind" on the part of Bagwell, plaintiff "at once signed the instrument of writing," a copy of which is as follows: "Georgia, Murray County. This is an indenture made between B. W. & S. J. Bagwell, of the first part, and J. E. Johnson, as party of the second part. Whereas the said B. W. Bagwell and J. E. Johnson have this day recanted a certain trade on real estate for the purpose of otherwise arranging said trade, having turned back to each other papers in said trade, for reasons better known to ourselves, now·to fully satisfy the said J. E. Johnson, I, S. J. Bagwell, agree to deed the said J. E. Johnson five acres of my land, provided said trade is not again made. Said five acres is to be deeded to him without cost to the said J. E. Johnson, in event the trade fails to again occur; and shall the trade above mentioned be well and satisfactorily made again, this contract to be void; otherwise of full effect. This May 8, 1901." This writing bore the signature of Bagwell; who also signed his wife's name thereto without, as plaintiff afterwards learned, any authority from her to do so. In June, 1901, plaintiff ascertained that Bagwell "was making some improvements on the property that he had bought from him, [and] this being unnatural, he thought that he had best see said Bagwell and have his bond made and give his notes to Mrs. S. J. Bagwell." The plaintiff accordingly went to Bagwell, who "told him they would fix the matter up any day"; but as Bagwell did not take any steps to do so, plaintiff waited several days and then "mentioned the matter again, and then the third time, and was put off without the papers. Soon after this, he had C. N. King to approach said Bagwell, as a friend to both parties, to see if he could get the matter adjusted, and said Bagwell refused to make deed to his wife to said land and have her to make bond for titles to said Johnson, but instead offered to have his wife make said Johnson a deed to five acres of land that the said Johnson had never before heard of, and on inquiry learned that said land was situated somewhere east of Spring Place and not worth more than one dollar per acre. The only land spoken of to said Johnson being the plot and the other land contiguous to that purchased from said Bagwell and being a part of the same tract, which contiguous land said Bagwell had offered to sell him at the time he pur-

chased the 3 1/2 acres," it was not until Bagwell refused to do more than just stated that plaintiff "saw that he had been defrauded out of his home." He "has since learned that the said Bagwell had made to his wife, by A. L. Keith, a paper purporting to be a deed to her," covering the land which Bagwell proposed to have his wife convey to plaintiff; but this paper was not recorded and he had no notice as to its contents. The said Bagwell knew "all the time that your petitioner was in the dark" and believed that "this 5 acres of land mentioned was the tract which he had purchased and enough around it to make 5 acres, and that the extra 1 1/2 acres were put up as a forfeit with the balance, if they failed to comply with the agreement." He "signed said written agreement under fraudulent representations of said B. W. Bagwell as to his purposes for wanting the change made in the trade," who withheld "the real facts as to what land his wife should deed," and whose true intention was to wrong plaintiff "out of his land, which he had in good faith purchased." These "were all latent facts which should have been disclosed; and had they been disclosed," plaintiff, who "had no other purpose in signing said writing but to favor said Bagwell," would not have signed the same. This "instrument was not signed by Mrs. S. J. Bagwell, but was signed by B. W. Bagwell without proper authority of law, and hence she could not be required to make deed to any land under said contract." Plaintiff stands "ready to execute notes as per his contract, and will when a bond for titles has been made to him from B. W. & S. J. Bagwell, as the court may direct."

The prayers of the petition were: "1st. That the said B. W. Bagwell be required to execute bond for titles to said Johnson as per original contract; and that should said B. W. Bagwell have made deed to the lands in dispute to his wife in pursuance to his agreement with the said Johnson, that the same be decreed void. 2nd. That should the court believe," after hearing the evidence, that Bagwell "was authorized to sign said written agreement for his wife, and there was no fraud on the part of said Bagwell; then the said Mrs. S. J. Bagwell be required to make bond for titles for the land so formerly conveyed by said B. W. Bagwell to your petitioner, and that all the terms be complied with as in said former contract." 3d. That the defendants "be required to pay such damages as may seem reasonable, not less than fifty dollars, as at-

torney's fees;" and 4th, that they be required to produce in court
"the deed made by A. L. Keith to Mrs. S. J. Bagwell, and also
. . all the deeds which they have to the premises in dispute." The
demurrer filed by the defendants was based on several grounds,
only two of which need be noticed. They were, (1) that the plain-
tiff does not in his petition allege "any act of Mrs. Bagwell that
entitles him to complain against her," and accordingly there is a
misjoinder of parties defendant; and (2) that his "petition on its
face shows that he surrendered whatever rights he had under the
trade voluntarily and for the distinct and avowed purpose of aid-
ing the defendant, B. W. Bagwell, in hiding his property from his
creditors, and that he could not be heard in a court of equity to
complain, because he comes with unclean hands."

1. As has been seen, the plaintiff distinctly alleged in his peti-
tion that Mrs. Bagwell did not sign the written instrument therein
set forth, but that her husband signed her name thereto "without
proper authority of law, and hence she could not be required to
make deed to any land under said contract." In other words, the
plaintiff admitted that she had never entered into any contract with
him respecting the land in controversy, and was not bound by the
terms of that writing. It is further to be noted that he does not
charge her with having any connection with the alleged fraud per-
petrated upon him by her husband, or allege that she has been
guilty of any wrong-doing whatsoever. Indeed, the plaintiff does
not undertake to say that, in point of fact, Bagwell has deeded the
land to his wife, or that she is asserting any interest therein. Why,
then, she should have been joined with her husband as a party de-
fendant we are unable to conceive. Certain it is that, under the
facts disclosed by the plaintiff's petition, he is not, as against Mrs.
Bagwell, entitled to any of the relief for which he prays.

2. Nor can he properly be permitted to maintain his action as
against B. W. Bagwell. There is no allegation that the representa-
tions made by the latter to the effect that he had "signed a note
for a man back where he came from and he was afraid that he was
going to have it to pay," and therefore wished to place his prop-
erty beyond the reach of the holder of that note, were false and
that Bagwell merely made these representations in order to de-
ceive the plaintiff and perpetrate a fraud upon him alone. Even
if such an allegation had been made we do not say that the plain-

tiff would then be entitled to the relief sought. As presented by the petition, it is to be presumed that this is simply a case where; two persons complotted to hinder, delay, and defeat a creditor of one of them, with the result that one of the wrong-doers himself falls a victim to the wiles of the other. In all such cases this court has uniformly held that no relief can be afforded the victimized wrong-doer, but that the parties are to be left as they stand. See Heineman v. Newman, 55 Ga. 262, Flewellen v. Fontaine, 58 Ga. 471, and Parrott v. Baker, 82 Ga. 365, for instances in point. Furthermore, the present case calls for an application of the rule stated in Sandeford v. Lewis, 68 Ga. 482, that "He who seeks equitable relief must come with clean hands and without laches." The plaintiff occupies the position of a confessed wrong-doer, in that he willingly and knowingly entered into a scheme whereby a fraud was to be perpetrated upon a creditor of Bagwell. The plaintiff's petition discloses that his intent was fraudulent, and that he; was influenced, not only by ties of friendship existing between Bagwell and himself, but by the hope and expectation that he would probably gain by the transaction precisely one and one half acres of land. His ready assent to the proposition that he should surrender his bond for titles and enter into a colorable transaction with Mrs. Bagwell whereby she should pretend to resell the land. to him was purely voluntary and without any justifiable excuse. Accordingly, he has no standing whatever in a court of equity, but must be left to pursue whatever legal remedies, if any, he can invoke.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*