22686. WHITLEY et al. v. WHITLEY.
22688. WHITLEY CONSTRUCTION COMPANY et al. v. WHITLEY.

ARGUED OCTOBER 13, 1964—DECIDED NOVEMBER 19, 1964—
REHEARING DENIED DECEMBER 3, 1964.

*Grant, Spears & Duckworth,* for G. M. Whitley.
*Zachary & Hunter,* for Whitley Construction Co.
*Llop & Long, Joseph L. Llop, Nick Long, Jr.,* for John E. Whitley.

GRICE, Justice. Three contracts entered into by a father, his sons and a corporation whose entire stock was owned by them is the basis of the petition we evaluate here. The father, John E. Whitley, filed the petition in the Superior Court of Fulton County against his sons, Grover M. Whitley and William J. Whitley, and the Whitley Construction Company, a corporation, seeking to have such contracts declared null and void, to recover damages and for injunctive and other relief against those defendants. To this petition as amended the sons and the corporation filed general demurrers. The overruling of them is assigned as error by the sons in case number 22686 and by the corporation in case number 22688.

The allegations of the lengthy petition, reduced to those necessary for this review, were the following.

The sons, acting individually and on behalf of the corporation, by wilful misrepresentations conspired to gain the father's con-

fidence with intent to defraud him of control and ownership of the corporation, and for this purpose fraudulently induced him to sign three instruments on May 10, 1960.

By the terms of one of those instruments, the father, in return for an annuity of $20,000 to be paid him annually by the sons, purported to transfer to them his life estate in the voting common stock of the corporation. By another of those instruments, the corporation, in consideration for the father's purported transfer to it of his non-voting stock in the corporation, guaranteed payment of the $20,000 annuity promised in the above mentioned contract and made certain covenants to fulfill that guaranty. By the third instrument, the corporation employed the father as chairman of its board of directors for a period of twenty years, at an annual salary of $20,000, with other benefits.

As inducement for the father to sign such contracts, the sons fraudulently misrepresented to him that such signing was "for the sole and exclusive purpose of saving . . . [the sons] great sums of money which would otherwise be due the Federal Government and the State Government upon the happening of the death of the . . . [father]," and that execution of the contracts would not change his relationship with the corporation. They represented to him that the signing would in no way deprive him of any control over the corporation, but that he would retain exclusive control over its policy, affairs, management and ownership.

As further inducement, the sons fraudulently stated to the father that if he became unhappy or dissatisfied in any manner over the operation of the corporation, "they would declare . . . [the contracts] null and void and . . . [they] would be held for nought."

The sons knew that the above mentioned representations made to the father were false, knew that they were made to deceive and defraud him and that they would not take place.

Petitioner was diligent but was lulled into a false sense of reliance upon his sons.

Immediately after the father signed the contracts, the sons advised him that he had no right, title or interest in any of the stock or control over the corporation and ordered him to refrain

from interfering with its management, all contrary to the understanding and agreement between them. They have had his stock, worth two million dollars, transferred to their names on the corporation's records.

The father has offered to return to the sons and the corporation the monetary consideration received pursuant to the contracts, but they have refused to accept it. The sons stated they would refuse tender.

The prayers of the petition included relief declaring the said contracts null and void, creation of a constructive trust, restitution to the father, actual and punitive damages, and injunction against transfer of the stock.

In support of their general demurrers to this petition, the defendants urged several contentions as to why it failed to set forth a cause of action. However, under our view of what is alleged, we do not reach those contentions.

According to the petitioner's own allegations, he comes into equity with unclean hands. Therefore, he must fail.

His avowed purpose in executing the contracts now complained of was to avoid estate taxes to the United States and this State, as provided by 26 U.S.C.A. § 2001 and Georgia *Code Ann.* § 92-3401. While these contracts upon their faces purported to transfer, for a valuable consideration, the petitioner's stock in the corporation, the allegations of his petition show that no actual divestment was intended. As summarized above, the petition recites the sons' statements that the sole purpose of such contracts was the saving of taxes upon the father's death, the father's acceptance of that purpose when he signed the contracts, and the understanding of the parties that, notwithstanding such contracts, the father would retain control and ownership of the corporation.

There is a difference between the legitimate arrangement of one's affairs so as to minimize or avoid taxes and sham transactions designed to camouflage the actual situation. 30 Am. Jur. 429-433, Internal Revenue, §§ 461-465; 47 CJS 208-211, Internal Revenue, §§ 77-80. The former are permissible, but the latter are disapproved and may result in penalty or criminal prosecution. 26 U.S.C.A. § 7201; *Code Ann.* § 92-9951.

Equity will not relieve the parties from such sham agreements. See, annotation "Right of grantor or transferor or his privies to attack conveyance or transfer made for purpose of evading taxation." 118 A.L.R. 1184.

The statement of this court in *Bagwell v. Johnson*, 116 Ga. 464, 468 (42 SE 732), is applicable to what is alleged here: "As presented by the petition, it is to be presumed that this is simply a case where two persons complotted to hinder, delay, and defeat a creditor of one of them, with the result that one of the wrong-doers himself falls a victim to the wiles of the other. In all such cases this court has uniformly held that no relief can be afforded the victimized wrong-doer, but that the parties are to be left as they stand. . . He who seeks equitable relief must come with clean. hands. . ." See also *Code* § 37-104; *McKinney v. Atkinson*, 209 Ga. 49 (70 SE2d 769).

Since all of the petitioner's prayers are predicated upon his right to cancellation of these contracts and the above ruling forecloses that relief, no cause of action is alleged for any of the relief sought. See *McKinney v. Atkinson*, 209 Ga. 49 (3), supra. Therefore, the judgments overruling the defendants' general demurrers to such petition are

*Reversed. All the Justices concur.*