## A03A1186. LANIER v. ANTHONY et al.
### (583 SE2d 893)

BLACKBURN, Presiding Judge.

In this action contesting the validity of a security deed and promissory note that reflected an unsatisfied obligation to the Anthony J. Anthony Trust ("Anthony Trust"), Robert L. Lanier appeals the trial court's grant of summary judgment to the trustee of the Anthony Trust, contending that the security deed and promissory note lacked force and effect. For the reasons set forth below, we affirm.

> Summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and while there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion.

(Punctuation omitted.) *Strickland v. DeKalb Hosp. Auth.*[1] This is just such a case.

When viewed in the light most favorable to Lanier, the evidence shows that Paul A. Anthony was the sole beneficiary of the Paul Andrew Anthony Trust ("Paul Trust") established in 1973 by his parents, Anthony J. Anthony and Pauline Anthony. The Paul Trust designated Mr. Anthony, Paul's father, as trustee. About 15 years later, at Paul's request and prior to Paul's marriage, Mr. Anthony, as trustee, purchased a 33.5-acre horse farm for Paul at 2941 Newborn Road in Morgan County. Including the purchase price of the farm, breeding stock, property improvements, and other items, Mr. Anthony, individually, and also as trustee for the Paul Trust, expended in excess of $445,000 on Paul's behalf.

In January 1992, Paul executed a promissory note under which Paul and the Paul Trust memorialized an obligation to pay $150,175.93 to Mr. Anthony. To secure the note, Paul executed a

---

[1] *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 68 (4) (397 SE2d 576) (1990).

security deed for the farm property. Under the deed to secure debt, the promissory note became payable "upon the conveyance, sale or lease of the above-described real property, but no later than January 24, 2002." Paul and Mr. Anthony agreed to terminate the Paul Trust, thereby making Paul the outright owner of the farm and other trust assets and income. Under the termination agreement, Paul and the Paul Trust acknowledged that the sum of $150,175.93 "has heretofore been loaned and/or advanced by [Mr.] Anthony, or related and/or affiliated entities of [Mr.] Anthony, to or for the benefit of the Trust." Under the termination agreement, all the assets of the Paul Trust were transferred to Paul and he assumed all of his trust's liabilities. The trust dissolution agreement, promissory note, and security deed were all signed by Paul, witnessed, and notarized. The security deed and promissory note were properly recorded in Morgan County in 1992. When Paul executed the documents, he was represented by counsel.

Later that same year, Mr. Anthony transferred and assigned his interest in the promissory note and the security deed to the Anthony Trust. Mr. Anthony established the Anthony Trust for the benefit of George J. Anthony and Tony Lee Anthony, Mr. Anthony's other two sons, and he designated their mother, Stanya Anthony, as trustee. Paul is not now and never has been a beneficiary of the Anthony Trust. The document transferring and assigning Mr. Anthony's interest to the Anthony Trust was also properly recorded in Morgan County in 1992. Shortly after Mr. Anthony transferred his interest to the Anthony Trust, Mr. Anthony's attorney so notified Paul in a letter dated October 14, 1992. The letter informed Paul that the "deed whereby the Farm is conveyed to you individually has been recorded, together with the mortgage reflecting an indebtedness to your Father in the amount of $150,175.93 (the 'Mortgage'). For your information, said Mortgage has been transferred to a trust, of which Stanya is the trustee." The attorney instructed Paul to contact him exclusively about all questions relating to the farm or the mortgage.

Paul married Jody Lynn Preuitt in April 1988, and when they divorced several years later, the farm was considered a marital asset. A final judgment and decree entered on May 19, 1994, incorporated a settlement agreement requiring Paul and Jody to sell the farm and to "split the net equity." This judgment, entered in Newton County, directed that "the $150,175.93 owed to the Husband's father, Anthony J. Anthony, shall be paid out of the Husband's portion of the equity received at the closing."

In March 2001, Paul and Jody again appeared before the Superior Court of Newton County. For the first time, the previously acknowledged indebtedness was referred to as "the alleged debt to Husband's father now deceased." Without addressing the validity of

the note and deed, the trial court entered a consent order resolving Paul's various delinquencies for child support, health insurance, property taxes, and life insurance. The consent order modified the final judgment so that "[t]he Wife shall have permanent and exclusive use, possession and title to the marital home at 2941 Newborn Road. . . .. Husband shall execute and deliver to Wife instanter a quitclaim deed relinquishing all right and title to said home instanter."

Thereafter, Paul executed two quitclaim deeds, the first releasing his interest in the farm to Jody and the second directing the Clerk of the Superior Court of Morgan County to mark the security deed satisfied. On the quitclaim deed to Jody, Paul designated himself as "Paul Andrew Anthony, individually and as the Emancipated Beneficiary of the Anthony J. Anthony Trust." The other quitclaim deed Paul executed as "Paul Andrew Anthony individually and as the Emancipated Beneficiary of the Paul Andrew Anthony Trust." But, the Paul Trust had long been dissolved and Paul was not a beneficiary of the Anthony Trust. Nor did Paul ever pay any amount to the Anthony Trust or obtain a release of the security deed from the trustee.

More than nine years after executing the promissory note, security deed, and the agreement to terminate the Paul Trust, and well after his father's death, Paul notified Stanya Anthony, by letter dated March 20, 2001, that the "security deed was filed to protect my interest in the farm. I am directing you as the Emancipated Beneficiary of the Anthony J. Anthony Trust to immediately mark the security deed satisfied." Paul added, "[a]s of this date, I have received nothing and you acting as the administrator for the Anthony J. Anthony Trust have failed to provide me with my trust benefits." Instead of responding directly to Paul, Stanya Anthony referred the letter to her attorney.

In June 2001, Lanier purchased the property at issue from Jody, who executed a warranty deed granting him fee simple title. When Lanier bought the property, however, the outstanding promissory note had not been paid to the Anthony Trust and the trust had not cancelled its security deed on the property. After the trustee refused to release the security deed and began advertising the property for foreclosure, Lanier filed suit.

In opposing the trustee's motion for summary judgment, Lanier relied heavily on Jody's and Paul's depositions. Jody testified that the deed to secure debt was "phony" and "not legitimate" and was created to protect Paul's interests in the divorce. Jody testified, "we never borrowed that money from those people. We do not [owe] that money to those people." Paul testified that his father had him sign the note and deed to "save me," meaning to shield his assets from Jody. Paul

testified that his father told him that he would receive the funds represented by the note either after the sale of the farm or after his divorce and that the note would be "taken care of."

Relying upon that testimony, Lanier claimed that Paul's debt was phony and designed at the time of the division of marital assets to protect Paul's assets from his wife. Lanier argued that since there was no consideration for the promissory note, the security deed that purported to secure the nonexistent debt was invalid. Lanier asserted that despite the apparent existence of the note and deed, Jody held clear title to the farm when she conveyed it to him. However, without explaining the legal basis for doing so, the trial court awarded summary judgment to the trustee. Lanier appeals.

1. Lanier contends that summary judgment was error because material disputed facts remain unresolved as to the underlying indebtedness for the promissory note and deed. He claims that neither document is valid and enforceable. We disagree.

Undisputed evidence shows that Mr. Anthony advanced substantial funds to Paul and to the Paul Trust, some of which came from Mr. Anthony's personal accounts. By Stanya Anthony's account, Paul and her husband had a strained relationship and often had argued about money. Stanya Anthony testified that after Paul had exhausted the funds in the Paul Trust, "Anthony kept paying and paying and paying."[2] She described how after depleting the funds in his own trust, Paul continued asking for and receiving money from his father. She explained that "the Promissory Note was made because Paul owed money to Anthony because Anthony was paying bills and everything else."

By executing the note and deed, Paul and the Paul Trust explicitly recognized the existence of a debt of $150,175.93 owed to Mr. Anthony. When Paul executed the agreement to terminate his trust, he did so agreeing to undertake sole liability for the debt to his father. Later, in the settlement agreement incorporated into the final judgment entered in their divorce, Paul and Jody both acknowledged the validity of the debt encumbering the farm. After the finalization of their divorce, neither Paul nor Jody asserted any legal challenge to the validity of the debt, note, or deed. Nor does the record contain any evidence that Paul asked Mr. Anthony before his death in November 1998 to arrange for the reconveyance of the note from the Anthony Trust or the cancellation of the note. Clearly, the record shows "good and valuable consideration" and a valid and enforceable debt underlying the security deed. See OCGA § 44-5-30.

---

[2] For example, in one letter to his lawyer dated January 2, 1990, Mr. Anthony listed certain expenditures that totaled $114,612.88, which he described as "amounts I have paid for the [Paul T]rust from my personal accounts."

Even had the debt been a sham, Paul's admitted participation in a fraudulent transaction would foreclose him from repudiating his debt. See *Whitley v. Whitley*.[3] In a cross-claim against the trustee, Paul sought to disavow the note and deed, asserting that "there was no consideration given for the encumbrance on 'The Property.'" But, the equitable principle of unclean hands would preclude him from doing so. See *Laxton v. Laxton*.[4] "An executed contract . . . made for the purpose of delaying or defrauding a creditor, is binding upon the maker, and he is estopped from impeaching it." (Punctuation omitted.) *Williams v. Williams*.[5] The principles of justice neither require nor allow inquiry into consideration instigated by a fraudulent grantor. *Parrott v. Baker*.[6]

After September 1992, the debt was no longer owed to Mr. Anthony but to the Anthony Trust. Even assuming arguendo that Mr. Anthony had provided assurances or promises to Paul that he would either cancel the debt or pay it on Paul's behalf, such promises, even if true, are unenforceable. The Statute of Frauds requires a promise to pay the debt of another to be reduced to writing, and here there was none. See *Pope v. Triangle Chem. Co.*[7]

Nor can Jody challenge the validity of the note and deed. When fraud in procurement of title to land is claimed, the action must be brought[8] within seven years after discovery of the fraud.[8] *Troup v. Troup*.[9] "Limitations of actions apply equally to courts of law and equity, but, in addition, the courts may impose an equitable bar whenever, from lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." *Hanleiter v. Spearman*.[10] Equity generally limits the right to set aside a conveyance for fraud to seven years from when the fraud is discovered or should have been discovered. *Jones v. Spindel*.[11]

Here, Jody testified that within two weeks of filing for divorce, she had learned about the note. Jody testified that Mr. Anthony told her that he was securing Paul's interest in the farm "to protect him." Notwithstanding that knowledge, Jody acquiesced to the terms of the

---

[3] *Whitley v. Whitley*, 220 Ga. 471, 473 (139 SE2d 381) (1964).

[4] *Laxton v. Laxton*, 267 Ga. 591, 592 (481 SE2d 227) (1997).

[5] *Williams v. Williams*, 255 Ga. 264, 265 (336 SE2d 244) (1985).

[6] *Parrott v. Baker*, 82 Ga. 364, 373 (9 SE 1068) (1889).

[7] *Pope v. Triangle Chem. Co.*, 157 Ga. App. 386, 389 (3) (b) (277 SE2d 758) (1981).

[8] The Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq. is not applicable here because it did not become effective until July 1, 2002. Under that Act, a cause of action for certain fraudulent transfers is extinguished unless brought within four years after the transfer or within one year after the transfer "could reasonably have been discovered by the claimant." OCGA § 18-2-79 (1).

[9] *Troup v. Troup*, 248 Ga. 662, 664 (2) (285 SE2d 19) (1981).

[10] *Hanleiter v. Spearman*, 200 Ga. 289, 295-296 (1) (b) (36 SE2d 780) (1946).

[11] *Jones v. Spindel*, 239 Ga. 68, 69 (1) (235 SE2d 486) (1977).

settlement recognizing Paul's debt of $150,175.93, a fact incorporated into the final judgment entered on May 19, 1994. Despite her discovery of the "sham" transaction and what she termed a "phony" deed, Jody failed to take any action to set aside the conveyance within seven years of her discovery. Therefore, she, too, is foreclosed from contesting the note and deed. See *Stephens v. Walker*.[12]

Lanier's title is derivative of Jody's title, and he cannot have an interest in the realty greater than she had. "A grantee in a deed takes no greater title than that held by the grantor, see 23 AmJur2d 297, Deeds, § 336, and extraneous evidence cannot vary the terms of a written deed." *Hornsby v. Holt*.[13] When Lanier purchased the property from Jody, she could convey to him no interest greater than that to which she held title and her title was subject to the prior recorded and unsatisfied security deed. See OCGA § 44-5-62. When Jody conveyed the property to Lanier by warranty deed, it was not free of encumbrances.[14] See *Northside Title &c. Co. v. Simmons*.[15] But, regardless of whether Lanier has a viable cause of action against Jody for breach of warranty, he plainly has no claim against the trustee. See id.

2. In light of our holding in Division 1 that Lanier purchased the property subject to a valid and enforceable security deed, Lanier's remaining enumerations of error are now moot.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JUNE 20, 2003.

*Heyman & Sizemore, William B. Brown, Jacqueline Marcucci, Lambert & Reitman, E. R. Lambert*, for appellant.

Jody L. Anthony, *pro se.*

*Lander & Osborne, Donald W. Osborne, Duane Morris, Charles W. Whitney, Joseph W. Ozmer II*, for appellees.

---

[12] *Stephens v. Walker*, 193 Ga. 330, 331 (2) (18 SE2d 537) (1942).

[13] *Hornsby v. Holt*, 257 Ga. 341, 342 (1) (359 SE2d 646) (1987).

[14] Lanier testified that before buying the farm, he knew "there had been some problems with the title." He testified that after Jody told him that she had clear title, he then bought the property and obtained title insurance.

[15] *Northside Title &c. Co. v. Simmons*, 200 Ga. App. 892 (409 SE2d 885) (1991).