## S05F0738. HAYES v. HAYES.
(620 SE2d 806)

SEARS, Chief Justice.

The appellant, Sandra Hayes, appeals from the trial court's final judgment of divorce, contending that the trial court erred in characterizing certain property as the separate, non-marital property of the

appellee, Monson Hayes, and that the trial court erred in calculating Monson's gross income for the purpose of determining his child support obligation.[1] For the reasons that follow, we agree with these contentions in part, and thus affirm the trial court's judgment in part and reverse it in part.

1. Ms. Hayes first contends that the trial court erred by characterizing certain property as the separate, non-marital property of Mr. Hayes. The contested property stems from money provided by Monson's parents for a down payment and improvements on the Hayeses' home. When Sandra and Monson purchased their first home, Monson's parents provided a down payment of $3,500. In addition, Monson's parents later provided $40,000 for improvements to Sandra and Monson's home. To provide the $40,000, each parent wrote two checks for $10,000. One check from each parent was payable to Sandra and one was payable to Monson. Thus, Sandra and Monson each received $20,000. As for the $40,000 in gifts, Monson and his father testified that the entire $40,000 was intended as a gift only to Monson, but that $20,000 was given to Sandra to avoid the gift tax repercussions that would have arisen if the parents had written checks to Monson for the entire $40,000. The trial court characterized all these gifts as Monson's separate property.

We conclude that the trial court erred in characterizing the $20,000 written in checks to Sandra as the separate property of Monson. Although it is permissible to legitimately arrange "one's affairs so as to minimize or avoid taxes," it is impermissible to engage in "sham transactions designed to camouflage the actual situation."[2] "Equity will not relieve the parties from such sham agreements."[3] Here, the testimony of Monson and his father established that Monson and his parents engaged in a sham transaction (the giving of $20,000 to Sandra) in order to camouflage the actual tax situation (the giving of $40,000 to Monson) from the Internal Revenue Service.[4] For this reason, equity will not relieve the Hayeses from the structure of the gifts, and the trial court erred in ruling that the entire $40,000 was the separate property of Monson.

As for the $3,500 provided as a down payment, there was conflicting testimony regarding whether it was provided as a gift to Monson or as a gift to Sandra and Monson. The trial court resolved

---

[1] The appellant's application for discretionary appeal was automatically granted under this Court's pilot project in domestic cases. See *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

[2] *Whitley v. Whitley*, 220 Ga. 471, 473 (139 SE2d 381) (1964).

[3] Id. at 474.

[4] Apparently, Monson and his parents structured the gifts so that his parents would not have to file gift tax returns and thus could avoid any potential tax consequences associated with such returns. See 26 USC § 2503.

this factual dispute by finding that the money was provided as a gift to Monson. Because we cannot conclude that this finding was clearly erroneous, we affirm the trial court's ruling that the $3,500 was Monson's separate estate.[5]

2. Sandra also contends that the trial court erred in calculating Monson's child support obligation.

(a) Sandra contends that OCGA § 19-6-15 (b) (1) and (2)[6] required the trial court to include economic in-kind benefits[7] provided by Monson's employer in calculating Monson's gross income for the purpose of determining his child support obligation. Contrary to Sandra's contentions, however, OCGA § 19-6-15 (b) (1) and (2) do not address economic in-kind benefits and thus do not require the inclusion of such benefits in gross income. OCGA § 19-6-15 (b) (4), however, does specifically address such benefits and provides only that they "**may** be included in calculating the obligor's gross monthly income." Moreover, the parties do not dispute that the benefits in question are not considered a part of Monson's gross income for income tax purposes,[8] and the benefits are not for daily personal living expenses, such as automobile or housing expenses.[9] These factors support the trial court's decision not to include the benefits in calculating Monson's gross income. We also note that the trial court's decision is consistent with the 2005 amendment to OCGA § 19-6-15.[10] That amendment, which has a delayed effective date of July 1, 2006, provides that "fringe benefits," including economic in-kind benefits, "shall be counted as income if they significantly reduce personal living expenses,"[11] and that

> [f]ringe benefits do not include employee benefits that are typically added to the salary, wage, or other compensation that a parent may receive as a standard added benefit,

---

[5] See *Wilson v. Wilson*, 277 Ga. 801, 805 (596 SE2d 392) (2004).

[6] OCGA § 19-6-15 (b) (1) and (2) provide that the computation of child support "shall be based upon gross income" and that, in determining a party's child support obligation, "gross income shall include 100 percent of wage and salary income and other compensation for personal services, interest, dividends, net rental income, self-employment income, and all other income, except need-based public assistance."

[7] These benefits included the employer's contributions for life insurance, medical insurance, and a retirement plan.

[8] See 26 USC §§ 61, 106; 26 CFR § 1.106-1.

[9] See *Hicks v. Hicks*, 526 SE2d 14, 16-18 (W. Va. 1999) (in-kind housing benefit included in gross income, as gross income includes in-kind benefits to the extent they provide the parent with property or services that the parent would otherwise have to provide); *Chapoteau v. Chapoteau*, 659 S2d 1381, 1384 (Fla. Dist. Ct. App. 1995) (under statute that provides that gross income includes " 'in-kind payments to the extent they reduce living expenses,' " employer-provided housing should be considered in determining gross income).

[10] See Ga. L. 2005, pp. 224, 234.

[11] Ga. L. 2005 at 234; OCGA § 19-6-15 (e) (4) (A), as amended.

including but not limited to employer paid portions of health insurance premiums or employer contributions to a retirement or pension plan.[12]

For the foregoing reasons, we conclude that the trial court properly declined to include the in-kind benefits in calculating Monson's gross income.

(b) Sandra also contends that the trial court erred by failing to count as part of Monson's gross income the $350 per month that Monson receives in book royalties. We agree that the trial court erred in failing to include the royalties when calculating Monson's gross income, as OCGA § 19-6-15 (b) (4) requires that trial courts include "compensation for personal services . . . and all other income."

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED OCTOBER 11, 2005.

*Dupree, King & Kimbrough, Hylton B. Dupree, Jr.,* for appellant.
*Baskin & Baskin, Carol S. Baskin, Brad E. MacDonald, Vic B. Hill,* for appellee.

---

[12] Ga. L. 2005 at 234; OCGA § 19-6-15 (e) (4) (D), as amended.